WILLARD VAN DYKE PRODUCTIONS, INC., Plaintiff, *v.* EASTMAN KODAK COMPANY, Defendant.

First Department, May 15, 1962.

*Henry J. Robinson* of counsel (*Kelly, Donovan, Robinson & Maloof,* attorneys), for plaintiff.

*Haliburton Fales, II,* of counsel (*William D. Conwell* and *Gerald L. Bader, Jr.,* with him on the brief; *White & Case,* attorneys), for defendant.

EAGER, J. This is a submission of controversy on agreed statement of facts pursuant to sections 546 to 548 of the Civil Practice Act. The prime question involved is whether or not the written notice accompanying the sale of film by the defendant Eastman Kodak Company is effectual to limit its liability for alleged negligence in the processing of the film when sometime later after exposure, the film is delivered to it for such purpose.

In January, 1959, the plaintiff purchased from defendant's agent in New York a quantity of its Kodak Ektachrome Commercial 16mm film. Each of the purchased rolls of this commercial film, as in the case of every roll of such film sold by defendant, was packaged in a container upon which appeared a label which read, in part, as follows:

## "Read This Notice

"This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company. Except for such replacement, the sale or subsequent handling of this film for any purpose is without warranty or other liability of any kind. Since dyes used with color films, like other dyes, may, in time, change, this film will not be replaced for, or otherwise warranted against, any change in color."

The label accompanying each package of film also contained the statement, plainly set out, that, "Film price does not include processing".

The particular film was purchased by the plaintiff to be used in fulfilling a contract which the plaintiff had with a third party for the filming of certain facilities located in Alaska. After purchasing the film, the plaintiff took it to Alaska and there the film was properly exposed, and it is admitted that thereby a negative resulted which, if properly developed, would have resulted in prints which were commercially valuable and fully satisfactory to fulfill plaintiff's contract with the third party.

After exposure, the plaintiff returned the film to New York where it was forwarded to defendant's laboratory to be developed and printed. The film was in good condition when received by defendant for processing, but, during the development thereof by the defendant in March, 1959, a substantial portion of it was damaged by a deposit of foreign material and by rub marks in such a way that such portion became commercially valueless. While it is expressly stipulated that such damage was not intentional or the result of fraudulent or malicious conduct, ordinary negligence on part of the defendant is not ruled out. On the stipulated facts here and in the absence of facts indicating that the defendant did perform its work with due care, we may infer that there was such negligence. (See *Aronette Mfg. Co.* v. *Capitol Piece Dye Works,* 6 N Y 2d 465.)

Following the processing of the film, and the return of the same to plaintiff, claim was made by it for its damages, including the expenses incurred by it in the necessary retaking of certain sequences in Alaska required to fulfill plaintiff's contract with the third party. Defendant, however, merely reimbursed plaintiff for the cost of the film and the prorata charge made for processing and developing the damaged portion. Plaintiff accepted checks for such reimbursement. Defendant refuses to make any payment to the plaintiff on account of the expenses incurred by it in the retaking of the sequences represented by the damaged film.

Upon basis of the foregoing facts, the plaintiff claims to be entitled to recover from defendant the sum of $1,537.50 as the reasonable cost of the rephotographing of sequences required by reason of the alleged negligence of defendant in the development of the film. On the other hand, the defendant claims that its liability to plaintiff was limited to a replacement of the film, as provided for in the written notice accompanying the film at time of its sale to plaintiff and further claims that it has discharged its liability to plaintiff by the payment to and acceptance by plaintiff of the cost of film plus cost of processing.

There were here two separate transactions. First, there was a sale of film by the defendant to plaintiff. In connection with such transaction the plaintiff was given express notice by the defendant that the price paid by plaintiff for the film did not include processing. Thus, the matter of the processing of the film was left for future bargaining. Then, it was some time after the completion of the sale that the defendant received the exposed film from plaintiff and undertook the development thereof. This later transaction, separate and distinct from the original sales contract, was in the nature of a bailment for mutual benefit. (See 5 N. Y. Jur., Bailment, §§ 24, 65, 66; *Aronette Mfg. Co.* v. *Capitol Piece Dye Works, supra,* p. 468.)

There was no written or formal contract entered into between the parties for the development of the exposed film. The film was delivered to and accepted by the defendant for the processing work thereon without the statement then of any conditions. Thus, there being no agreement to the contrary, the defendant, on undertaking this work, was obliged to perform it with ordinary care and skill (8 C. J. S., Bailments, § 30, p. 281; 5 N. Y. Jur., Bailment, §§ 65, 66; *Aronette Mfg. Co.* v. *Capitol Piece Dye Works, supra,* p. 468). "Defendant was certainly obliged to exercise the care which its held-out expertness and the value of plaintiff's property would call for" (*Howard* v. *Handler Bros. & Winell,* 279 App. Div. 72, 75, affd. 303 N. Y. 990). The defendant does not claim it was not so bound. It is not the defendant's contention that there was an agreement exempting it from the duty to exercise due care. Even the terms of the notice upon the label accompanying the sale of film are not claimed by defendant to have the effect of relieving it from such duty. Defendant's position is merely that, by virtue of the terms of the notice, there was an agreement limiting its liability for any damage to the film to the replacement thereof whether or not such damage was occasioned by reason of its alleged negligence.

It is true that, in this State, the parties could have lawfully made an agreement limiting the liability of defendant for its alleged negligence to the replacement of the film. (See 5 N. Y. Jur., Bailment, §§ 69, 70; *Ciofalo* v. *Vic Tanney Gyms,* 10 N Y 2d 294; *Klar* v. *H. & M. Parcel Room,* 270 App. Div. 538; *Sagendorph* v. *First Nat. Bank of Philmont,* 218 App. Div. 285.) The law, however, does not look with favor upon such an agreement. (See *Boll* v. *Sharp & Dohme,* 281 App. Div. 568, affd. 307 N. Y. 646; *Howard* v. *Handler Bros. & Winell, supra,* p. 75; *Western Union Tel. Co.* v. *Cochran,* 277 App. Div. 625,

631, affd. 302 N. Y. 545.) It will not be presumed that the owner of a valuable property would entrust it to another for handling with the understanding in advance that the carelessness of the latter will be condoned in whole or in part. (See *Herzig* v. *New York Cold Stor. Co.,* 115 App. Div. 40, affd. 190 N. Y. 511.) Consequently, a bailee relying upon an agreement to cut down the full measure of its common-law responsibility for damages for negligence is bound to clearly show that the bailor, with complete understanding that such was to be the agreement, gave assent thereto. (See *Klar* v. *H. & M. Parcel Room, supra.*)

Under the circumstances here, it will not be inferred that the plaintiff, when it entered into the new contract with defendant for the processing of the film, intended to give assent to the incorporation therein of the liability limiting provisions accompanying the former sale transaction. That transaction had been completed, and, by virtue of the defendant's express statement, the matter of the consideration for the processing of the film was reserved for a future contract. So, if a liability limiting covenant was to be a part of the consideration for the later contract for processing, this would be a matter to be again considered and agreed upon by the parties. (See, e.g., *Zayenda* v. *Spain & Spain,* 280 App. Div. 752.) But, here, it does not appear that such a covenant was a factor influencing the defendant's subsequent bargain, including its implied obligation to exercise due care. There is no showing, as is usual in these cases, that the price charged for defendant's handling and work was reduced by reason of such a covenant. Under the circumstances, it will not be implied that the plaintiff intended, without special consideration to it, to continue in force the provisions of the former contract which were in derogation of its rights.

Furthermore, even if, as defendant contends, the terms of the notice upon the label accompanying the sale by it of the film did survive and became incorporated into the subsequent contract for processing, nevertheless, such terms would not be construed to have the effect claimed by defendant. The notice was drafted by the defendant without the plaintiff being consulted on the contents or wording thereof. Therefore, the terms thereof are to be narrowly construed, and any ambiguity therein as to scope thereof is to be resolved in favor of the plaintiff. (See *Howard* v. *Handler Bros. & Winell, supra.*) "The terms must be strictly construed * * * and most strongly against defendant, it being defendant's draftsmanship paring down the ordinary rights of its customers." (*Howard* v. *Handler Bros. & Winell, supra,* p. 75.)

Moreover, it is well settled that, irrespective of the source of draftsmanship, contractual provisions claimed to have the effect of limiting one's common-law liability for negligence must be expressed in clear wording readily understandable as having such purport. (5 N. Y. Jur., Bailment, § 70; *Howard* v. *Handler Bros. & Winell, supra*; *Boll* v. *Sharp & Dohme,* 281 App. Div. 568, affd. 307 N. Y. 646, *supra*.) Limitations in connection with such liability must be expressed in such clear and precise language that a running reading will clearly reveal such intendment. (See *Rappaport* v. *Phil Gottlieb-Sattler, Inc.,* 280 App. Div. 424, 426, affd. 305 N. Y. 594.)

Applying therefore, as we should, a strict construction to the notice upon the label on the defendant's film, it is certain that the wording thereof is not to be given the effect claimed by defendant. Inasmuch as the parties were then contracting with reference to the sale of the film, with processing expressly excluded, the statements in the notice, strictly construed, are referable only to the warranties and liabilities in connection with the sale of the unexposed film. The provision for the limitation of defendant's liability in connection with the " subsequent handling of this film for any purpose " would be confined to a limitation of liability in the subsequent handling of the unexposed film for any purpose in connection with the sale. Moreover, the word " handling " used in connection with unexposed film, narrowly construed, would not include processing, involving, as it does, more than the mere handling of such film, namely, specialized work on exposed film with the use of materials and technical equipment. If the defendant had intended to broaden the scope of the limiting provisions to embrace liability in connection with such work, we may infer that it would have used the words " development " or " processing " which are terms readily understood in the field of photography.

In any event, the notice did not contain the clear and unequivocal language required to be used if the defendant intended to limit its common-law liability for the consequences of its negligence and thus it will not be construed to have that effect.

Finally, the defendant was not discharged from liability for plaintiff's damages by the payment by it and the acceptance by the plaintiff of the cost of the damaged film and the processing cost thereof. It does not appear that the same was accepted by plaintiff in settlement of its claim. The payment was merely of the portion of plaintiff's claim which was conceded by defendant to be owing to plaintiff, and the acceptance of the same by plaintiff was not an accord and satisfaction of its claim for the additional disputed item of damages. (See 1 N. Y. Jur.,

Accord and Satisfaction, § 24; *Mance* v. *Hossington,* 205 N. Y. 33, 36.)

The plaintiff shall have judgment for $1,537.50, as claimed, together with costs.

RABIN, J. P., McNALLY, STEVENS and STEUER, JJ., concur.

Judgment for plaintiff for $1,537.50, as claimed, together with costs. Settle order on notice.